JS-6

Anthony M. Barnes (SBN 199048)
amb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Telephone: (415) 326-3173

Kelly Clark (Bar No. 312251)
Email: kelly@losangeleswaterkeeper.org
LOS ANGELES WATERKEEPER
120 Broadway, Suite 105
Santa Monica, CA 90401
Tel: (310) 394-6162

*Attorneys for Plaintiff*
Los Angeles Waterkeeper

David B. Sadwick (Bar No. 126268)
Email: dsadwick@ttsmlaw.com
TATRO TEKOSKY SADWICK LLP
333 S. Grand Avenue, 42 Floor
Los Angeles, CA 90071

*Attorneys for Defendant*
Johnson & Johnson Consumer Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, A California non-profit corporation,<br><br>Plaintiff,<br>vs.<br><br>JOHNSON & JOHNSON CONSUMER INC., a New Jersey corporation,<br><br>Defendant. | Case No. CV 21-3148-DMG PLAx)<br><br>**CONSENT DECREE [9]**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251** *et seq.***)** |

## CONSENT DECREE

The following Consent Decree is between Los Angeles Waterkeeper ("Waterkeeper") and Johnson & Johnson Consumer Inc. ("JJCI"). Waterkeeper and JJCI are each hereinafter referred to as an individual "Settling Party" and collectively as the "Settling Parties."

**WHEREAS**, Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS**, Waterkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, JJCI is the owner and operator of a consumer product manufacturing facility located at 5755 W. 96th Street, Los Angeles, CA 90045 (mailing address 5760 W. 96th Street, Los Angeles, California 90045), hereinafter referred to by the Settling Parties as the "Facility";

**WHEREAS**, manufacturing activities at the Facility are included in one or more of the following SIC codes: 2841 (Soaps and other detergents, except specialty cleaners); 2844 (Perfumes, cosmetics, and other toilet preparations); and 2834 (Pharmaceutical Preparations) with the Waste Discharge Identification ("WDID") number of 4 19I010364; as of the Effective Date of this Consent Decree, as defined below, industrial activities occurring at the Facility include product compounding, manufacturing, filling, operation of tank farms, truck loading and unloading, and wastewater treatment, among other industrial processes.

**WHEREAS**, Waterkeeper's members live and/or recreate in and around waters which Waterkeeper alleges receive storm water from the Facility to the Los Angeles County municipal storm sewer system, and into waters of the United States, including the Dominguez Channel and the Dominguez Channel Estuary (collectively, the "Receiving

Waters"), and Waterkeeper contends that storm water discharges from the Facility are regulated by the Clean Water Act, Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** storm water and non-storm water discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as superseded by Order No. 2014-0057-DWQ and amended by Order No. 2015-0122 –DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the Storm Water Permit includes the following requirements for all permittees, including JJCI, summarized as follows: (1) develop and implement a stormwater pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as appropriate, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, (3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and, (4) when necessary, implement additional BMPs to prevent or reduce  pollutants that are causing or contributing to exceedances of applicable water quality standards ("Exceedances");

**WHEREAS**, subsequent to the 2019-2020 storm season, the Facility implemented the following additional BMPs: (a) Increase the frequency of manual sweeping of accumulated solids in selected locations to twice per month during the wet season (the ("Wet Season")[1] plus prior to anticipated rain events; (b) Mechanical sweeping of accumulated solids in selected locations with high-efficiency (regenerative) equipment on a monthly basis during the Wet Season; (c) Cleaning selected sumps prior to anticipated storm events; (d) During initial period of storm events, divert water from selected locations to industrial wastewater treatment unit for processing rather than discharging to

---

[1] The Wet Season is defined as October 1 to May 31.

the storm water system; (e) Sweep roof tops in selected locations once per month during the Wet Season; (f) Install downspout filtration units in selected locations.

**WHEREAS**, on August 12, 2020, Waterkeeper sent JJCI, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Los Angeles Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b); and the Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Facility;

**WHEREAS**, on ___April 12___, 2021, Waterkeeper filed a complaint against JJCI in the United States District Court, Central District of California (the "District Court") alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Facility ("Complaint") and the Settling Parties stipulated, and requested that the District Court order, that any requirement that JJCI respond to the Complaint or that the Settling Parties undertake any action other than seeking entry of this Consent Decree be stayed pending the District Court's determination whether to enter this Consent Decree;

**WHEREAS**, Waterkeeper alleges JJCI to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the Facility;

**WHEREAS**, JJCI denies all substantive allegations and allegations of violations in the Notice Letter and Complaint relating to the Facility and makes no admissions of any facts, allegations, laws, legal conclusions, liabilities, damages, or claims;

**WHEREAS**, Waterkeeper and JJCI have agreed that it is in the Settling Parties' mutual interest to enter a Consent Decree setting forth terms and conditions appropriate for resolving the allegations set forth in the Complaint with respect to the Facility without further proceedings; and

**WHEREAS**, all actions taken by JJCI pursuant to this Consent Decree shall be

made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE, FOR PURPOSES OF THIS CONSENT DECREE ONLY, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a).

2.     Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District.

3.     The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1).

4.     Waterkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree until this Consent Decree terminates or expires, or as long thereafter as is necessary for the Court to resolve any timely-filed motion to enforce this Consent Decree.

**I.     OBJECTIVES**

6.     It is the express purpose of the Settling Parties entering this Consent Decree to further the objectives set forth in the Clean Water Act and to resolve those issues alleged by Waterkeeper in its Complaint. Considering these objectives and as set forth fully below, JJCI agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the Clean Water Act at the Facility until this Consent Decree terminates or expires.

**II.     AGENCY REVIEW AND TERM OF CONSENT DECREE**

7.     Waterkeeper shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40

C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which are to be provided to JJCI upon request. If the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. Following the Federal Agencies' review, the Settling Parties shall submit the Consent Decree to the Court for entry.

8.     The term "Effective Date" as used herein shall mean the day that this Consent Decree is entered by the Court.

9.     This Consent Decree shall terminate on the date which is five (5) years from the Effective Date ("Termination Date"), unless: (a) prior to the Termination Date either Party has invoked the dispute resolution provisions of this Consent Decree and there is an ongoing, unresolved dispute regarding either Party's compliance with this Consent Decree, in which case the Consent Decree shall terminate upon final resolution of the dispute pursuant to the dispute resolution provisions contained herein; (b) prior to the Termination Date, JJCI receives approval of a "Notice of Termination" (as that term is defined in the Storm Water Permit) for the Facility, in which case the Consent Decree will terminate as to the Facility approved for Notice of Termination five (5) days after notice of the Notice of Termination is provided to Waterkeeper, provided all monetary requirements owed under the Consent Decree accrued up to that date are satisfied.

## III.     COMMITMENTS OF THE SETTLING PARTIES

### A.     Storm Water Pollution Control Best Management Practices

10.     Current and Additional Best Management Practices. To the extent necessary to prevent Exceedances, JJCI shall implement the BMPs described in the Facility's SWPPP, which are identified in paragraph 11 of this Consent Decree, and (2) develop and implement additional BMPs to the extent necessary to comply with the provisions of this Consent Decree, the Storm Water Permit and Clean Water Act, including but not limited to those, as applicable, which achieve the Best Available Technology

Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT"). In addition, the Storm Water Permit Receiving Water Limitations (as defined in the Storm Water Permit) require that storm water discharges from the Facility not cause or contribute to an exceedance of applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan. JJCI shall develop and implement BMPs necessary to comply with the Storm Water Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or limit specified analytes in storm water discharges from the Facility to the extent necessary to comply with this Consent Decree and the Storm Water Permit.

11.     Structural and Non-Structural BMPs for the Facilities: To the extent necessary to comply the standards set forth in Table 1 of this Consent Decree, JJCI shall implement the BMPs included in the Facility's current SWPPP, including the following BMPs added subsequent to the 2019-2020 storm season: (a) Increased frequency of manual sweeping of accumulated solids in selected locations to twice per month during the Wet Season plus prior to anticipated rain events; (b) Mechanical sweeping of accumulated solids in selected locations with high-efficiency (regenerative) equipment on a monthly basis during the Wet Season; (c) Cleaning selected sumps prior to anticipated storm events; (d) During the initial period of storm events, diverting water from selected locations, as documented in the SWPPP, to the industrial wastewater treatment unit for processing rather than discharging to the storm water system; (e) Sweeping roof tops in selected locations once per month during the Wet Season; (f) Installing downspout filtration units in selected locations.

**B.     Discharge Locations and Storm Water Sampling**

12.     <u>Discharge Locations</u>. The current and future storm water sample locations for the Facility are identified in **Exhibit A,** the Facility site map. Should JJCI revise the future storm water sample locations depicted on **Exhibit A**, JJCI will provide Waterkeeper with notice of the updated Exhibit A within five (5) days of uploading the

revised sample locations to the California Water Resources Control Board's Stormwater Multiple Application and Report Tracking System ("SMARTS").

13.    <u>Sampling</u>. The following storm water monitoring procedures shall be implemented at the Facility:

13.1.    <u>Frequency</u>. Until this Consent Decree expires or terminates, JJCI shall collect samples from all discharge locations at the Facility from a minimum of four (4) "qualifying storm events" that occur in a reporting year such that JJCI collects two (2) samples during the first half of the reporting year and two (2) samples during the second half of the reporting year, provided that a sufficient number of such qualifying storm events occur during any reporting year or half of a reporting year.

13.2.    A "qualifying storm event" or "QSE" is a storm event that produces a discharge from at least one drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area [and occurs during normal business hours and does not cause or occur during unsafe conditions for sample collection].

13.3.    <u>Contained or Stored Storm Water</u>. To the extent storm water is stored or contained in a tank or a tote and subsequently discharged as storm water (as opposed to being discharged to a publicly owned treatment works otherwise in a manner which does not constitute a storm water discharge), JJCI shall sample the stored or contained water at the Facility before it is discharged from the Facility even if not during operating hours.

13.4.    <u>Parameters</u>. To the extent required by the Storm Water Permit, JJCI shall analyze each storm water sample collected from a Sample Location for the analytes set forth in the Table 1 Numeric Action Levels.

13.5.   <u>Laboratory</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

13.6.   <u>Detection Limits</u>. The laboratory shall use analytical methods adequate to detect the individual analytes at or below Table 1 Numeric Action Levels.

13.7.   <u>Hold Time</u>. All samples collected from the Facility shall be delivered to the laboratory as necessary to ensure that sample "hold time" is not exceeded for each analyte sampled. For field measurements, such as pH, if the Facility is at or above a Level 1 Exceedance Response Action for that particular analyte pursuant to the Storm Water Permit, JJCI shall use portable instruments, and not pH paper, which shall be calibrated and used according to manufacturers' instructions and approved industry methodology, *i.e.*, 40 C.F.R., Part 136.

13.8.   <u>Results</u>. JJCI shall request that sample analysis results be reported to JJCI within twenty (20) days of laboratory receipt of the sample if that timing will not cause JJCI to incur "rush" charges, or, if that timing would cause JJCI to incur "rush" charges, the shortest amount of time longer than twenty (20) days that will not result in JJCI incurring "rush" charges.

13.9.   <u>Reporting</u>. JJCI shall provide Waterkeeper with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all samples described and taken in accordance with the samples identified in paragraphs 13.1 and 13.2 collected at the Facility, within thirty (30) days of receiving the results.

**C.   Analyte Levels in Discharges**

14.   <u>Action Levels</u>. JJCI shall review the storm water sample results to confirm that those results do not exceed the numeric action level(s) ("NAL(s)") for the respective

analytes set forth in Table 1 of this Consent Decree in any reporting year. If the average of all storm water sample results for a single analyte in any reporting year exceed the Annual NAL(s), or exceed an Instantaneous Maximum NAL twice, JJCI shall follow the Action Plan requirements detailed in paragraph 15.1 below with respect to such analyte(s).

## Table 1. Numeric Action Levels

| Analyte | Test Method | Reporting Units | Annual NAL | Instantaneous Maximum NAL | Instantaneous Maximum TNAL[1] |
|---|---|---|---|---|---|
| TSS (Total Suspended Solids) | SM 2540-D | mg/L | 100 | 400 | -- |
| Oil and Grease | EPA 1664A | mg/L | 15 | 25 | -- |
| pH | pH Test Kit | S.U. | NA | Less than 6.0, greater than 9.0 | -- |
| Total Zinc | EPA 200.8 | mg/L | 0.26 | NA | 0.89887 |
| Nitrate + Nitrite Nitrogen | ICSM 4100 | mg/L as N | 0.68 | NA | -- |

*Notes:*

[1] *TNAL is applicable if zinc is detected in stormwater samples collected from the Site.*

*mg/L = Milligrams per liter*

*NA = Not applicable*

*S.U. = Standard Unit*

15.     Action Plan for Table 1 Exceedances. Until this Consent Decree expires or terminates, in any reporting year during which an Action Plan is required under paragraph 14, JJCI shall prepare an Action Plan as described in paragraph 15.1 and provide same to Waterkeeper by July 15 of the following reporting year. In any year that an Action Plan is submitted, JJCI shall make a single Action Plan payment as described in paragraph 15.3.

15.1.   Action Plan Requirements. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s); and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as reasonably feasible, but in no case later than November 1 of the upcoming reporting year. Defendant shall notify Waterkeeper in writing when an Action Plan has been implemented.

15.2.   Action Plan Review. Waterkeeper shall have fourteen (14) days upon receipt of the Action Plan to provide comments. Within fourteen (14) days of receiving Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

15.3.   Action Plan Payments. Defendant shall pay a single Three Thousand

Dollars ($3,000) payment each year an Action Plan is submitted to Waterkeeper. Payments pursuant to this paragraph shall be made to "Los Angeles Waterkeeper" addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

16. If Waterkeeper provides comments on an Action Plan and JJCI concurs with Waterkeeper's comments, JJCI shall revise its SWPPP and/or Monitoring Implementation Plan ("MIP"), as applicable, within thirty (30) days to the extent necessary to reflect corresponding changes and/or additional BMPs implemented by JJCI as set forth in the Action Plan. JJCI shall notify Waterkeeper in writing within ten (10) days when the BMPs required in any Action Plan have been implemented, and the SWPPP and/or MIP have been revised.

**D. Visual Observations**

17. All visual observations shall be conducted in accordance with the terms of the Storm Water Permit and this Consent Decree, and shall include at least the following:

17.1. Storm Water Discharge Observations. Until this Consent Decree expires or terminates, JCCI shall conduct visual observations at each storm water discharge location identified in Exhibit A during each Qualifying Storm Event.

17.2. Non-Storm Water Discharge Observations. Until this Consent Decree expires or terminates, JJCI shall conduct monthly non-storm water visual observations at each discharge point.

18. JJCI shall maintain logs of the visual observations required by the Storm Water Permit, and until this Consent Decree expires or terminates, such logs shall be available for review in conformance with the Storm Water Permit and shall make these records available for Waterkeeper's review via email within five (5) business days of the request.

19.     JJCI shall be entitled to provide redacted copies of logs and other documents based on confidentiality, proprietary information, employee privacy, and other considerations.

**E.      Employee Training**

20.     Following conclusion of the 2019-2020 Wet Season, JJCI conducted additional employee training to familiarize employees at the Facility with the requirements of the Storm Water Permit and the Facility's SWPPP. The training program included use of written training materials needed for effective implementation of the training program.

21.     JJCI shall ensure that there are enough employees assigned to implement the BMPs and conduct other compliance activities required by the Storm Water Permit and this Consent Decree, and that these employees are properly trained to perform the required activities.

22.     Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of JJCI who is a Qualified Industrial Storm Water Practitioner ("QISP") familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated as necessary to ensure that employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the SWPPP and/or MIP, as appropriate to the employee's job responsibilities. Any new employee who is responsible for implementation of any portion of the SWPPP, the MIP, or compliance with other terms of the Storm Water Permit or Consent Decree shall receive training within ten (10) business days after being hired, or before being responsible for compliance with the terms of the Storm Water Permit or Consent Decree, whichever is later.

23.     JJCI shall maintain training records to document compliance with Section II.E of this Consent Decree and shall make these records available for Waterkeeper's review via email within ten (10) days of a request. Waterkeeper shall not make such a

request more than annually, and such request shall not require JJCI to disclose to Waterkeeper any confidential, private, or proprietary information. The Training Program shall be specified in the SWPPP and JJCI shall modify the SWPPP as necessary to reflect the training program required by this Consent Decree.

F.     **Storm Water Pollution Prevention Plan and Monitoring Implementation Plan**

24.     Within forty-five (45) days of the Effective Date, JJCI shall amend the Facility's SWPPP and/or MIP to incorporate the relevant BMP requirements identified in paragraph 11 of this Consent Decree to the extent such requirements are not already reflected in the Facility's SWPPP. JJCI agrees to submit any such updated SWPPP and/or MIP to Waterkeeper upon completion for review and comment, provided that JJCI may upload any such SWPPP to SMARTS before or after submission to Waterkeeper:

24.1.   Review of SWPPP and/or MIP: Waterkeeper shall have thirty (30) days from receipt of the amended SWPPP and/or MIP, if any, referenced in paragraph 24 to propose any changes. Within thirty (30) days of receiving Waterkeeper's comments and proposed changes to the SWPPP, JJCI shall consider each of the comments and proposed changes and either accept them or explain in writing why a proposed change is not incorporated. If any changes from Waterkeeper's comments are accepted, then JJCI shall amend the SWPPP for uploading or re-uploading to SMARTS.

24.2.   JJCI shall revise the SWPPP and/or MIP if there are any material changes in the Facility's operations, including but not limited to changes in storm water discharge points or BMPs, within thirty (30) days of the changes, which will be subject to Waterkeeper's review and comment as provided in paragraph 24.1 above, provided that JJCI may upload any such SWPPP to SMARTS before or after submission to Waterkeeper;

24.3.   The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP and/or MIP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.

**G.     Compliance Monitoring and Reporting**

25.     Every year until this Consent Decree expires or terminates, Waterkeeper may conduct one annual site inspection ("Site Inspection"), subject to reasonable conditions specified by JJCI, for the purpose of ensuring compliance with this Consent Decree and the Storm Water Permit. Conditions previously agreed to by the Settling Parties in connection with any visit by Waterkeeper to the Facility shall be presumed reasonable with respect to any Site Inspection, as will a requirement that Waterkeeper and Waterkeeper's agents execute an access agreement containing conditions including, but not limited to, insurance naming JJCI as an additional insured beneficiary, indemnification of JJCI, restriction of access to exterior locations at the Facility, restrictions based on safety and health considerations, and confidentiality of proprietary, confidential, private, and non-public information.  Any Site Inspection shall occur during normal business hours, and Waterkeeper shall provide JJCI with as much notice as possible—but at least seventy-two (72) hours' notice prior to a Site Inspection in anticipation of wet weather, and two (2) weeks' notice during dry weather. For any Site Inspection requested to occur in wet weather, Waterkeeper shall be entitled to postpone and reschedule for a later date during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice shall be provided by telephone and electronic mail to the individual(s) designated below at paragraph 52. During the Wet Weather inspection, Waterkeeper may request that JJCI collect a sample of discharged storm water from the Facility's designated industrial discharge point(s) referenced in its SWPPP, and should a sample be taken JJCI shall provide Waterkeeper with a copy of the results of analytical testing of such sample(s) for the analytes set forth in Table 1 of this Consent

Decree. Waterkeeper's representative(s) may observe such sample(s) being collected by JJCI's representative. Waterkeeper shall be permitted to take photographs during any Site Inspection, subject to reasonable conditions specified by JJCI. Conditions previously agreed to by the Settling Parties in connection with photography by Waterkeeper at the Facility shall be presumed reasonable with respect to photography by Waterkeeper at the Facility.

26.     During a Site Inspection, Waterkeeper and/or its representatives shall be allowed access to the Facility's SWPPP, MIP, and all other non-privileged monitoring records, reports, and sampling data pertaining to storm water in accordance with the procedures identified in this Consent Decree, subject to reasonable conditions specified by JJCI.

27.     Reporting and Documents. Starting on the Effective Date and until this Consent Decree expires or terminates, JJCI shall, within ten (10) business days, notify Waterkeeper of all material, non-administrative documents related to storm water quality at the Facility to the extent such documents are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality, including data and reports uploaded to SMARTS. Any Facility-specific correspondence related to the Facility's compliance with the Storm Water Permit or storm water quality received by JJCI from any regulatory agency, State or local agency, county or municipality shall be provided to Waterkeeper within ten (10) business days of receipt by JJCI.

28.     Compliance Monitoring. JJCI shall pay a total of Four Thousand Dollars ($4,000), in the first year of the term of this Consent Decree, and Three Thousand Dollars ($3,000) annually each year until this Consent Decree expires or is terminated, to compensate Waterkeeper for costs and fees to be incurred for monitoring the Facility's compliance with this Consent Decree. The initial payment shall be made within thirty (30) days of the Effective Date, and any subsequent payments shall be made within thirty (30) days of the anniversary of the Effective Date. Payments by JJCI to Waterkeeper made pursuant to this paragraph shall be payable to "Los Angeles Waterkeeper" via U.S.

Mail or commonly accepted carrier to 120 Broadway, Santa Monica, CA 90401.

**H.    Environmental Mitigation, Litigation Fees and Costs**

29.    <u>Environmental Project</u>. To respond to the alleged environmental harms resulting from allegations in the Complaint, JJCI agrees to make a total payment of Thirty Thousand Dollars ($30,000.00) to the Rose Foundation payable to the "Rose Foundation for Communities and the Environment" and sent via overnight mail to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. JJCI shall provide Waterkeeper with documentation of such payment.

30.    <u>Reimbursement of Waterkeeper's Fees and Costs</u>. JJCI shall pay a total of Sixty Thousand Dollars ($60,000.00) to Los Angeles Waterkeeper to reimburse Waterkeeper for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred because of investigating and preparing the lawsuit and negotiating this Consent Decree. Payments shall be made within thirty (30) days of the Effective Date and payable to: "Aqua Terra Aeris Law Group LLP" via U.S. Mail or commonly accepted carrier to Attn: Anthony M. Barnes, 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

**IV.    <u>DISPUTE RESOLUTION</u>**

31.    This Court shall retain jurisdiction over this matter until this Consent Decree expires or terminates for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

32.    <u>Meet and Confer</u>. Either Settling Party may invoke the dispute resolution procedures of this Section IV by notifying the other Settling Party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the notice.

33.     Settlement Conference. If the Settling Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 32, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

34.     In resolving any dispute arising from this Consent Decree before the Court, the Settling Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. § 1365(d)</u>, and applicable case law interpreting such provisions.

## V.     <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

35.     <u>Waterkeeper's Waiver and Release of JJCI.</u> In consideration of the above, upon the Effective Date of this Consent Decree, Waterkeeper, on Waterkeeper's own behalf and on behalf of Waterkeeper's past, present, and future officers, directors, administrators, trustees, partners, agents, members, affiliated entities, predecessors, successors, assigns, managers, employees, partners, joint-ventures, attorneys, and other representatives fully and completely, absolutely, expressly and irrevocably, generally release and discharge JJCI, and JJCI's past, present, and future shareholders, owners, executives, officers, directors, managers, employees, members, licensees, administrators, insurers, trustees,  direct or indirect parent business entities, subsidiaries, divisions, affiliated business entities, predecessors, successors or assigns, agents, partners, joint-venturers, attorneys, and other representatives, and each of them, whether individually or as part of a group, and all persons or entities acting by, through, or in concert with them or any of them, from, and waives, any and causes and manners of action or action, claim or claims, predicate acts, damages, losses, penalties, demands, liabilities, obligations, costs, or expenses whatsoever, fixed or contingent, direct or indirect, whether known or unknown, suspected or unsuspected, manifested or unmanifested, filed or unfiled, asserted or unasserted, existing or contingent, foreseeable or unforeseeable, ripe or unripe, regardless of basis or theory, relating to

any conduct, action, omission, or inaction, or otherwise, that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date (or other expiration or termination) of this Consent Decree. ***THIS IS A GENERAL RELEASE OF THE ENTITIES AND INDIVIDUALS RELEASED HEREIN.***

36.     Waterkeeper acknowledges that Waterkeeper may hereafter discover facts different from, or in addition to, those which Waterkeeper now claims or believes to be true with respect to the claims released herein, and that this Consent Decree shall be and remain effective in all respects, the discovery of such different or additional facts with respect to the claims released herein notwithstanding. In furtherance of the general release provided by Waterkeeper in this Consent Decree, Waterkeeper acknowledges that Waterkeeper knowingly and voluntarily waives any and all rights Waterkeeper may have under Section 1542 of the California Civil Code or any similar provision any other law, whether federal law or the law of any state or common law, to the full extent that Waterkeeper may lawfully waive all such rights and benefits pertaining to the subject matter hereof, and that the consequences of such waiver have been explained to Waterkeeper by Waterkeeper's attorneys and/or advisors. Waterkeeper acknowledges that Waterkeeper is familiar with the concepts contained in, and the provisions of, Section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The provisions of Section 1542 notwithstanding, and for the purpose of implementing a full and complete general waiver/release in accordance with the

terms set forth in this Consent Decree, Waterkeeper expressly acknowledges that the general release and waiver in this Consent Decree are intended to include in their scope, but not be limited to, all claims which Waterkeeper does not know or suspect to exist in Waterkeeper's favor as of the Termination Date, and that this release contemplates the extinguishment of any such claim or claims arising out of or relating to any conduct, practice or action prior to the Termination Date. Waterkeeper expressly waives any right to assert hereafter any claims that Waterkeeper may assert were excluded from the 60-Day Notice, the Complaint, or this Consent Decree through ignorance, oversight, error or otherwise.

37.    <u>JJCI's Waiver and Release of Waterkeeper.</u> In consideration of the above, upon the Effective Date of this Consent Decree, and excluding written agreements executed and delivered by the Settling Parties as of the Effective Date and claims arising therefrom, JJCI, on JJCI's own behalf and on behalf of JJCI's officers, directors, employees, parent business entities, subsidiaries, affiliated business entities and each of their successors or assigns, release Waterkeeper and Waterkeeper's officers and directors, from, and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree; provided that such release and waivers shall not apply to any claims, if any, arising from the Settling Parties' "Camera Pass, Access, and Confidentiality Agreement" dated as of November 4, 2020.

38.    Nothing in this Consent Decree limits or otherwise affects Waterkeeper's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Water Board, Regional Water Board, EPA, or any other judicial or administrative body on any matter relating to JJCI's compliance at the Facility with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date, provided Waterkeeper first notifies JJCI of Waterkeeper's position. Waterkeeper is only obligated to notify JJCI under this paragraph until this Consent Decree expires or terminates.

## VI.   **MISCELLANEOUS PROVISIONS**

39.   <u>No Admission of Liability</u>. The Settling Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither this Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as (a) a finding, adjudication, admission, or acknowledgement of any fact, allegation, law, conclusion, liability or damage claim, or (b) an admission of violation of any law, statute, rule, permit, regulation, or any other requirement. JJCI maintains and reserves all defenses JJCI may have to any alleged violations at any time. Nothing herein shall constitute a waiver or compromise of any defense or right of JJCI.

40.   <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, electronic, and/or facsimile signatures, if duly authorized and delivered, shall be deemed to be originally executed counterparts of this Consent Decree.

41.   <u>Authority</u>. The undersigned representatives for Waterkeeper and JJCI each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Settling Party's duly authorized and delivered signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

42.   <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

43.   <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

44.   <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning

the subject matter of this Consent Decree with the exception of the Settling Parties'
tolling agreement(s) and any extensions of such tolling agreement(s) and the Settling
Parties' "Camera Pass, Access, and Confidentiality Agreement" dated as of November
4, 2020.

45.     Severability. In the event that any provision, term, paragraph, section, or
sentence of this Consent Decree is determined by a court to be unenforceable, void,
invalid, or illegal as applied to any person, entity, or circumstance, that determination
shall not adversely affect (a) an application to any other person, entity, or
circumstance, (b) any other provision, term, paragraph, section, or sentence of this
Consent Decree, or (c) the Consent Decree as a whole; provided that if such provision,
term, paragraph, section, or sentence which is determined to be unenforceable, void,
invalid, or illegal is material, a Settling Party which received a benefit or protection
from such provision, term, paragraph, section, or sentence shall be entitled to seek
other remedies, including without limitation modification or termination of the Consent
Decree.

46.     Choice of Law. The laws of the United States of America shall govern
this Consent Decree.

47.     Diligence. JJCI shall diligently file and pursue all required permit
applications, if any, for structural BMPs, if any, and shall diligently attempt to procure
contractors, labor, and materials needed to complete all BMPs by the required
deadlines.

48.     Negotiated Settlement. The Settling Parties have negotiated this Consent
Decree, and agree that it shall not be construed against the party preparing it, but shall
be construed as if the Settling Parties jointly prepared this Consent Decree, and any
uncertainty and ambiguity shall not be interpreted against any one party.

49.     Modification of the Consent Decree. Except as otherwise provided in this
Consent Decree, this Consent Decree, and any provisions herein, may not be changed,
waived, discharged, or terminated unless by (a) a court order; (b) a written instrument,

signed by the Settling Parties and approved by the Court; (c) operation of law; or (d) pursuant to the terms of this Consent Decree. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified or as soon as reasonably feasible thereafter.

50.     <u>No Assignment; No Third-Party Beneficiaries</u>. No Settling Party shall, without the express, written consent of the other Settling Party, assign any rights or interests in the Consent Decree. Except as otherwise expressly provided in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties and their legal corporate successors only, and to no other person or entity. There are no third-party beneficiaries to this Consent Decree, and only Waterkeeper and JJCI have standing to enforce the terms and provisions of this Consent Decree.

51.     <u>Force Majeure</u>. Neither of the Settling Parties shall be considered to be in default in the performance of any of their respective obligations, or have any liability, under this Consent Decree when performance is prevented or delayed due to a "Force Majeure" event. A Force Majeure event is any circumstance beyond a Settling Party's reasonable control, including without limitation, any act of God, war, fire, earthquake, flood, hurricane, windstorm, or natural catastrophe; explosions, vehicle collisions or crashes, criminal acts; civil disturbance, vandalism, accident, sabotage, or terrorism; epidemic or pandemic; governmental order or decree; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental entity. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Settling Party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing by a preponderance of the evidence that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the

failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event.

52.     <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission with a completed confirmation request to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, by carrier, or by hand delivery (in combination with confirmed electronic mail communication that a physical copy of the notice or other correspondence is being transmitted) to the following addresses:

| <u>If to Waterkeeper</u>: | <u>If to JJCI</u>: |
|---|---|
| Anthony M. Barnes | David B. Sadwick |
| Aqua Terra Aeris Law Group LLP | Tatro Tekosky Sadwick LLP |
| 4030 Martin Luther King Jr. | 333 S. Grand Avenue, 42 Floor |
| Oakland, CA 94609 | Los Angeles, CA 90071 |
| amb@atalawgroup.com | dsadwick@ttsmlaw.com |
| | |
| <u>With copies to</u>: | <u>With copies to</u>: |
| Kelly Clark, Staff Attorney | Cristina Stummer |
| Los Angeles Waterkeeper | Senior Counsel, Environmental, |
| 120 Broadway, Suite 105 | Health, Safety & Sustainability |
| Santa Monica, CA 90401 | One Johnson & Johnson Plaza |
| kelly@lawaterkeeper.org | New Brunswick, New Jersey 08933 |

Notifications of communications shall be deemed submitted one day following confirmation of delivery or acknowledgement of receipt via email by the recipient. Any change of address or addresses shall be communicated in the manner described above for giving notices.

53.     If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Settling Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court, provided that such modification would not result in one or more substantive provisions of this Consent Decree being reasonably

1  unacceptable to a Settling Party. If the Settling Parties are unable to modify this Consent

2  Decree in a mutually acceptable manner that is also acceptable to the District Court, this

3  Consent Decree shall immediately be null and void as well as inadmissible as a

4  settlement communication under Federal Rule of Evidence 408 and California Evidence

5  Code sections 1152 and 1154. In the event this Consent Decree becomes null and void

6  pursuant to this paragraph or otherwise, any requirement that JJCI respond to the

7  Complaint or that the Settling Parties undertake any action other than seeking entry of

8  this Consent Decree shall not be effective unless and until the District Court issues an

9  order requiring such response or action, in which case the time for such response or

10 action shall be governed by the Federal Rules of Civil Procedure unless the District

   Court's order specifies a different amount of time.

11

12      The Settling Parties hereto enter into this Consent Decree and submit it to the

13 Court for its approval and entry as a final judgment.

14

15      **IN WITNESS WHEREOF**, the undersigned have executed this Consent

16 Decree as of the date first set forth below.

17

18 APPROVED AS TO CONTENT

19

20 Dated:    2/7/21              By: _____

21                              Bruce Reznik

22                              Executive Director

23                              Los Angeles Waterkeeper

24

25 Dated:    2/02/2021           By: _____

26

27                              Johnson & Johnson Consumer Inc.

28                              Tina French, Assistant Corporate Secretary

---

Consent Decree                    25                    Civil Case No.

APPROVED AS TO FORM

Dated: _____ February 4, 2021 _____

By: _____
Anthony M. Barnes
Aqua Terra Aeris Law Group
Attorneys for
Los Angeles Waterkeeper

Dated: _____ February 5, 2021 _____

By: _____
David B. Sadwick
Tatro Tekosky Sadwick LLP
Attorneys for
Johnson & Johnson Consumer Inc.

**IT IS SO ORDERED.**

Date: April 22, 2021

Hon. DOLLY M. GEE
UNITED STATES DISTRICT JUDGE